UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT SOLOMON,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>C/O I. CASTANEDA, *ET AL*,<br><br>　　　　　Defendants. | Case No. 1:15-cv-01801-RRB<br><br>**<u>DISMISSAL ORDER</u>** |

Vincent Solomon, a California state prisoner appearing *pro se* and *in forma pauperis*, brings this action under the Civil Rights Act (42 U.S.C. § 1983) against various officials of the California Department of Corrections and Rehabilitation.[1]  Solomon's action arises out of his incarceration at California Correctional Institution–Corcoran.  Solomon is currently incarcerated at the Substance Abuse Treatment Facility–Corcoran.

I.    **SCREENING REQUIREMENT**

This Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.[2]  Because

---

[1]  In addition to C/O Castaneda, Solomon names as Defendants:  C/O S. Sanchez; C/O A. Bank; Sgt R. Press; C/O Plotniik; H. Tate, M.D.; and Settles, RN.  In his Complaint Solomon also named as Defendants: Lt. Johnson; Warden M. Stainer; K. Sampson, Appeals Coordinator; J.D. Lozano, Appeals Chief; Lisa Green, Kern County District Attorney; M. Hodges, Chief of Appeals; S. Reed, C.D.W.; Capt. P. Matson; Lt. M. Lopez; R. Manuel, Chief of Appeals; and A. L. Zaanchi, Appeals Coordinator.  Because he has omitted them from his Amended Complaint, the Court assumes Solomon has abandoned his claims as against those Defendants.

[2]  28 U.S.C. § 1915A(a).

this Court has previously set forth the screening requirements in its Initial Screening Order, it does not repeat them herein.

## II.      BACKGROUND

In his Complaint raised seven claims.   (1) an excessive force claim against C/O Castaneda, C/O Sanchez, R.N. Settles, and Sgt. Press.   (2) A destruction of personal property claim against C/O Sanchez, C/O Bank, C/O Castaneda, and Sgt. Press.   (3) A denial of medical care or retaliation claim against Dr. Tate. (4) CDW Reed, Capt. Madsen, and Lt. Lopez improperly permitted Sgt. Press to process both his staff complaint and CDCR 602 appeal;  and that Sgt. Press and C/O Plotnik destroyed his medical appliances. (5) Capt. Madsen violated Solomon's due process rights.  (6) Lt. Lopez, Lt. Johnson, and CDW Reed refused to take disciplinary action against Sgt. Reed for the alleged use of excessive force.   (7) Warden Stainer, D.A. Green, and Appeals Coordinator Sampson refused to bring criminal charges against the CDCR officers who allegedly violated Solomon's rights, and Chief Appeals Officer Hodges did not timely respond to his inmate grievance

In its Initial Screening Order the Court found that Count 1 stated a claim against C/O Castaneda, Sgt Press, and R.N. Settles. The Court dismissed Count 1 against C/O Sanchez with leave to amend. Count III against Dr. Tate was dismissed with leave to amend.  In all other respects the Complaint was dismissed without leave to amend.

The Court also cautioned Solomon that although it appeared he had exhausted his administrative remedies as against C/O Castaneda, C/O Sanchez, Sgt. Press, and C/O Plotnik, he had not as against the other Defendants.

III.    **GRAVAMEN OF AMENDED COMPLAINT**

*Claim 1*.  Alleges that on November 23, 2011, C/O Castaneda came to Solomon's cell intending to kill or otherwise harm him through the use of pepper-spray and a T-16 grenade.  Solomon further alleges that in forcibly removing him from his cell Castaneda and C/O Sanchez used excessive force to restrain him, i.e., use of hand-cuffs that were too small.  Solomon also alleges that Sgt. Press and C/O Banks dragged him across the floor, deprived him of a decontamination shower, and forced Solomon to sleep in his contaminated clothes for a period of eight days.  Finally, Solomon alleges that RN Settles neither did anything to stop Sgt. Press and C/O Banks from dragging him across the floor nor report them for this misconduct.[3]

*Claim 2*.  Again alleges that C/O Sanchez, C/O Bank, C/O Castaneda, and Sgt. Press removed and destroyed Solomon's personal property; including, legal work, law books, family photos, magazines, orthopedic shoes, and both pairs of eyeglasses.

*Claim 3*.  This claim, directed at Dr. Tate, alleges several separate incidents in that Dr. Tate:

(1) November 8, 2009 – improperly wrote Solomon up and terminated his morphine medication.

(2) May 5, 2011 – terminated Solomon's pain medications.

(3) August 11, 2011 – terminated Solomon's medical chronos.

---

[3]  In his original Complaint Solomon alleged that R.N. Settles slammed him the ground.  By its omission, the Court assumes that Solomon has abandoned that allegation. Also see Claim 4.

(4) December 15, 2011 – deprived Solomon of his eyeglasses and orthopedic shoes.

(5) December 20, 2011 – removed personal pictures from Solomon's cell.

(6) January 2012 – pasted Solomon's website page in the medical center.

*Claim 4.*  A separate claim against R.N. Settles for:  (1) failing to protect him from Sgt. Press and C/O Banks; (2) refusal to push Solomon in a wheel chair; (3) refusal to provide necessary medical assistance (the use of an inhaler to alleviate asthma); and (4) failure to report the misconduct of Sgt. Press and C/O Banks.

*Claim 5.*  Alleges that CDW Reed, Capt. Madsen, and Lt. Lopez improperly permitted Sgt. Press to process both his staff complaint and CDCR 602 appeal.

*Claim 6.*  Although somewhat unclear, this claim appears to combine in a single claim unrelated allegations against several Defendants.

(1) An excessive force claim against C/O Sanchez and C/O Castaneda.

(2) A claim against R.N. Settles for failure to treat the injuries Solomon suffered as a result of the excessive use of force.

(3) A claim against Dr. Tate for failure to treat the injuries Solomon suffered as a result of the excessive use of force.

For relief Solomon requests:  (1) policy changes that allow inmates to press criminal charges against correctional officials; (2) $100,000 in damages for being held in the SHU; (3) $1.5 million in punitive damages; (4) $1.5 million for pain and suffering; and (5) $10,000 for lost/destroyed property.

Solomon initiated two grievances that were processed through the Third Level of

Review:  Log No. CCI-12-00040 and Log No. CCI-12-00048.

*Log No. CCI-12-00040.*

**I.    APPELLANT'S ARGUMENT**:  It is the appellant's position that on November 23, 2011, Correctional Officer (CO) Casteneda came to his cell with a clear intention to kill him. The appellant claims that he was called to the cell front with a lie that he was receiving legal mail, which CO Casteneda never gave him. The appellant stated he got back on his bed and asked the whereabouts of Correctional Sergeant (Sgt.) R. Press and Sgt Rolland.  He further claims that CO S. Sanchez and Casteneda kept putting him in single cuffs, cutting his wrists and hands causing him to bleed. He hurt his shoulder and has a broken bone in his right wrist. They also refused to move the appellant to a lower bunk, lower tier pursuant to his medical chrono.  They told him that Sgt. Press told them to do what they wanted to do to the appellant. This is when CO Casteneda sprayed the appellant while he was on his bed. He closed the food port, and then opened it over and over spraying the appellant until the can was empty.  The appellant then claims CO Casteneda went and got a T-16 grenade, opened his food port three times and sprayed him and one time he threw T-16 in his cell.  He claims that Sgt. Press put him in tank number 122 and forced him to eat three sack lunches off the floor, sleep on the floor and no shower. Sgt. Press also allowed COs S. Sanchez and Casteneda to destroy his legal work, family photos and other items in his cell. The appellant is requesting a full investigation by the District Attorney; he wants to press charges against all CDCR staff involved to prove CO Casteneda and Sgt. Press are lying.

**II    SECOND LEVEL'S DECISION**:  The reviewer affirmed that an appropriate supervisory staff was assigned to conduct an inquiry into this matter. The inquiry included a review of the submitted material and an interview of the involved parties.  In order to determine the facts, the inquiry arising from this appeal included an interview of the appellant; interview of department employees; and review of current policies, laws, and procedures. Additional research may have included interviews of other inmates or review of the appellant's central file. The Second Level of Review (SLR) noted that all staff personnel matters are confidential in nature and the appellant will only be notified whether the actions of staff were or were not in compliance with policy.  The SLR found that the staff did not violate policy. The SLR partially granted the appeal in that an inquiry was conducted.

**III    THIRD LEVEL DECISION**:  Appeal is denied.

**A. FINDINGS**:  Upon review of the documentation submitted, it is determined that the appellant's allegations have been reviewed and evaluated by administrative staff and an inquiry has been completed at the SLR.  In the event that staff conduct was riot in compliance with policy, the institution would take the appropriate course of action.  All staff personnel matters are confidential in nature and not privy to the inquiries of other staff, the general public, or the inmate population, and would not be released to the appellant. In this case, the institution has reported to the appellant that an inquiry was conducted, and the actions of staff were determined to be in compliance with policy. The Third Level of Review (TLR) notes that although the appellant has the right to submit an appeal as a staff complaint, the request for administrative action regarding staff; the placement of documentation in a staff member's personnel file; that a staff member be reprimanded; or the request for monetary compensation is beyond the scope of the appeals process. The TLR reviewed the findings of the confidential inquiry and concurs with the findings of the SLR; that the actions of staff were in compliance with departmental policy.  No relief is provided at the TLR.

**B. BASIS FOR THE DECISION**:
California Penal Code Section: 832.5, 832.7, 832.8
California Code of Regulations, Title 15, Section: 3001, 3004, 3084.1, 3268, 3270, 3287, 3380
CDCR Operations Manual, Section: 31140.14

**C. ORDER:**  No changes or modifications are required by the Institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.[4]

*Log No. CCI-12-00048*

**I     APPELLANT'S ARGUMENT**:   It is the appellant's position that Correctional Officer (CO) Plotnik failed to inventory all of his personal property and/or illegally destroyed it, including his television (TV), eyeglasses and orthopedic shoes. The appellant relates that on November 23, 2011, he was involved in an altercation with a correctional officer, which resulted in staff spraying him with a chemical agent, placing him in handcuffs and removing him from his cell.  He relates that a few days later he was given his personal property, which CO Plotnik inventoried and packed. The appellant states that he informed staff that his personal magazines, books, ear buds, 300 family photos, hygiene products (one and one half bags of shampoo and

---

[4]  Log No. CCI-12-00040, Docket 1, pp. 27–28 (dated July 20, 2012).

one-half deodorant), thermal top and bottom, eyeglasses, orthopedic shoes and digital TV were destroyed or confiscated illegally. The appellant acknowledges that the TV in question was damaged due to rain leaking into his cell. The appellant acknowledges that staff exchanged the TV; however, he was issued a 1999 RCA, when his was a brand new digital TV. He believes he is entitled to a new digital flat screen TV.

In Section "D" of this appeal, the appellant adds a new issue regarding Correctional Sergeant (Sgt.) R. Press' involvement during the First Level of Review (FLR). The appellant claims that he and Sgt. Press have been involved in previous incidents and that his judgment toward him is tainted. Furthermore, the appellant alleges that Sgt. Press and CO Plotnik admitted to opening all of his personal and legal letters along with removing all of his magazines from their plastic covers in an effort to search his property. Since Sgt. Press and CO Plotnik failed to return the magazines into their covers, they are responsible for exposing them to chemical agent. The appellant requests on appeal full compensation for his damaged, destroyed and confiscated personal property.

II    **SECOND LEVEL'S DECISION**:  The reviewer found that staff are not responsible for the appellant's damaged or alleged missing property.  The reviewer considered the appellant's concerns and provided him a detailed response, addressing each of his concerns.  The reviewer affirms that the appellant assaulted a correctional officer on or about November 23, 2011, which resulted in him being sprayed with a chemical agent, handcuffed and removed from his cell. On November 25, 2011, CO Plotnik inventoried and packed the appellant's property. A CDC Form 1083, Inmate Property Inventory was completed and the appellant was given an opportunity to review and sign it; however, he refused. The appellant's property was transported to Receiving and Release (R&R) on the same day. On November 28, 2011, the appellant was issued his property by CO Grant. The appellant informed CO Grant that the aforementioned items were missing. On February 10, 2012, the reviewer interviewed CO Plotnik regarding the issues of this appeal.  CO Plotnik stated that when he collected the appellant's property, there were magazines that had other inmate's names and numbers on them, which appeared to be crossed out. There were other magazines, without covers, that did not have any identification on them at all. CO Plotnik added that some of the magazines were so contaminated with chemical agents that he was unable to read the covers. As for the missing photos, ear buds and hygiene products, CO Plotnik verified that he inventoried and packed whatever was in the appellant's cell. The reviewer relates that during the appeal process, developed information revealed that the appellant routinely exchanged magazines with other inmates and that his books were located in two other cells. In that the

appellant was involved in an incident, that required the use of chemical agent, coupled with the information that the appellant exchanged his magazines with other inmates and loaned out his books, the institution denies the appellant's request for full compensation of his personal property. As for the alleged damaged or confiscated TV, the reviewer affirms that the appellant's TV was damaged due rain leaking into his cell.  On November 21, 2011, the appellant was issued a replacement TV. The appellant signed a Security Housing Unit (SHU) Property-Release of Liability/Compensation Form, dated November 21, 201 l.  The reviewer states that by signing this form and accepting the TV, the institution/CDCR is released from any further liability.

As for the appellant's alleged missing eyeglasses, CO Plotnik informed the reviewer that he discovered two pair of eyeglasses when he was inventoried and packed the appellant's property. Since CDCR Operations Manual, Section 54030, Article 43, only allows SHU inmates to possess one pair of eyeglasses, CO Plotnik took the eyeglasses to the medical department who determined that one pair of eyeglasses had been obtained through legal means. There was no receipt for the second pair of eyeglasses. Upon issuance, CO Plotnik asked the appellant how he wanted to dispose of the second pair of eyeglasses. The appellant informed him to just get rid of them. CO Plotnik states that because of the appellant's statement, he elected to place them in a secure area.

As for the appellant's confiscated orthopedic shoes, the reviewer states that CO Plotnik informed him that during a review of the appellant's central file, it was determined that Dr. H. Tate rescinded the appellant's prior CDCR Form 7410, Comprehensive Accommodation Chrono for orthopedic shoes. The two pair of orthopedic shoes were confiscated and sent to R&R. The appellant was issued a pair of state shoes appropriate for inmates assigned to the SHU. On February 11, 2012, the reviewer interviewed the appellant and asked how he would like to dispose of the non-allowable property, pursuant to California Code of Regulations, Title 15, Section (CCR) 3191 (c). The appellant informed the reviewer that he would not choose any of the choices in CCR 3191(c) and again requested full compensation for the orthopedic shoes and one pair of eyeglasses.

As for the appellant's claim that Sgt. Press was inappropriately involved in the appeal process, the reviewer concludes that this claim is false. The appellant has failed to produce any evidence that substantiates his claim of impropriety. Despite the appellant's disagreement with the FLR decision, the Second Level of Review (SLR) decision denied the appellant's request.

**III THIRD LEVEL DECISION**:  Appeal is denied.

    **A.  FINDINGS**:  The documentation and arguments are persuasive that the appellant failed to support his appeal issues with sufficient evidence or facts to warrant a modification of the SLR. The Third Level of Review (TLR) notes that institutional staff determined that the appellant was involved in an incident on or about November 23, 2011, that required the use of chemical agent.  The appellant was handcuffed and removed from his cell.  Two days later the staff inventoried and packed his property.  Involved staff found some of the appellant's magazines to be contaminated with chemical agent. These magazines were unable to be identified as to the proper owner. Many of the magazines in the appellant's cell were addressed to other inmates.  Developed information during the FLR revealed the appellant routinely exchanged magazines with other inmates and also loaned out his books.  Additionally, the reviewer determined that the TV in question was replaced on November 21, 2011, as it was damaged due to rain leaking into the appellant's cell.  This incident was separate from the incident on November 23, 2011, and will not be further addressed. In addition, the reviewer learned that the appellant's eyeglasses had been accounted for and properly disposed. The orthopedic shoes in question were confiscated, as the appellant's related CDC 7410 had been rescinded and he was no longer approved to possess the shoes. The TLR notes the appellant was issued appropriate shoes for an inmate assigned to the SHU program.  Finally, as or the appellant's claim that Sgt. Press should not have been involved in the appeal process due to previous incidents between him and the appellant, the TLR finds the SLR decision to be correct. There is no evidence that supports the appellant's claim that Sgt. Press is biased against the appellant. The TLR finds that there is no evidence that proves staff were careless or negligent in handling the appellant's property.  No reimbursement is due the appellant as no proof of liability [copy unintelligible]. The TLR concurs in the SLR decision [copy unintelligible].

    **B.  BASIS FOR THE DECISION**:
CCR: 3001,3006,3190,3191,3193,3287

    **C. ORDER:**  No changes or modifications are required by the Institution.

This decision exhausts the administrative remedy available to the appellant within CDCR. If dissatisfied, the appellant may forward this issue to the California Victims Compensation and Government Claims Board,

Government Claims Unit, P.O. Box 3035, Sacramento, CA 95812-3035, for further review.[5]

## III.    DISCUSSION

*Exhaustion*.  Exhaustion of administrative remedies prior to bringing suit is required irrespective of the relief sought by the prisoner and regardless of the relief provided by the process.[6] Although not jurisdictional, exhaustion is nonetheless mandatory, and there is no discretion to excuse it.[7] "Proper exhaustion" means "complet[ing] the administrative review process in accordance with the applicable rules."[8] "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."[9] Although all available remedies must be exhausted, "those remedies need not meet federal standards, nor need they be plain, speedy and effective."[10] "For prisons, . . ., that do not instruct prisoners on what precise facts must be

---

[5]  Log No. CCI-12-00048, Docket 1, pp. 44–46 (dated July 30, 2012).  The Court notes that parts of the last two sentences of the Third Level Findings in the electronically filed copy are unintelligible.  This is minor defect and does not appear to affect the Court's ability to understand or review the decision.

[6]  42 U.S.C. § 1997e(a) (mandating that "[n]o action shall be brought . . . until [the prisoner's] administrative remedies . . . are exhausted."); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Booth v. Churner*, 532 U.S. 731, 742 (2001).

[7]  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

[8]  *Jones v. Bock,* 549 U.S. 199, 218 (2007).

[9]  *Id.*

[10]  *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (quoting *Booth*, 532 U.S. at 739) (internal quotation marks omitted)).

alleged in a grievance, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought."[11]

A prisoner is not required to affirmatively plead exhaustion.  Instead, exhaustion is an affirmative defense to be raised and proven by the defense.[12] California law provides a prisoner with an adequate procedure to exhaust administrative remedies.[13] "Exhaustion should be decided, if feasible, early in the proceedings before reaching the merits of a prisoner's claim."[14]  This will usually be by a motion for summary judgment.[15] On the other hand,  "[a] complaint is subject to dismissal for failure to state a claim if the allegations of the Complaint, taken as true, show the plaintiff is not entitled to relief."[16] Thus, "in those rare cases where a failure to exhaust is clear from the face of the complaint, a defendant

---

[11]   *Akhtar v. Mesa*, 698 F.3d 1202, 1211 (9th Cir. 2012) (internal citations and quotation marks omitted).

[12]   *Jones v. Bock*, 549 U.S. 199, 212–17 (2007); *Albino*, 747 F3d at 1166, 1168.

[13]   Cal. Code Regs. tit. 15, § 3084.1(b) ("Unless otherwise stated in these regulations, all appeals are subject to a third level of review, as described in section 3084.7, before administrative remedies are deemed exhausted.  All lower level reviews are subject to modification at the third level of review.").  Section 3084.7 provides for three levels of review, the third level conducted by the Secretary of the California Department of Corrections and Rehabilitation, or by a designated representative.  *See Brown v. Valoff*, 422 F.3d 926, 929–30 (9th Cir. 2005).

[14]   *Albino*, 747 F3d at 1170.  The Ninth Circuit also noted that "if discovery is appropriate, the district court may in its discretion limit discovery to evidence concerning exhaustion, leaving to later—if it becomes necessary—discovery directed to the merits of the suit."  *Id.*

[15]   *Id.* at 1166, 1168–69 (overruling in part *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003)).

[16]   *See Jones*, 549 U.S. at 215 (noting that if the allegations show that relief is barred by the applicable statute of limitations, an affirmative defense, the complaint is subject to dismissal); *Albino*, 747 F3d at 1169.

may move under Rule 12(b)(6) for failure to state a claim."[17] A defendant has the initial burden to prove "that a grievance procedure existed, and the prisoner did not exhaust that available remedy."[18] Once a defendant has met this burden, the burden shifts to the plaintiff to demonstrate that the grievance procedure was inadequate, ineffective, unobtainable, unduly prolonged, inadequate, or futile.[19] If a court finds that a plaintiff has failed to exhaust, "the proper remedy is dismissal of the claim without prejudice."[20]

In this case, it is clear that in pursuing his administrative claim in CCI-12-00040 Solomon has properly exhausted his administrative remedies as against C/O Castaneda, C/O Sanchez and Sgt. Press.  In administrative claim CCI-12-00048, Solomon names only C/O Plotnik.[21] Thus, it appears that Solomon has failed to exhaust his administrative remedies with respect to the remaining Defendants.

*Statute of Limitations*.  "For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law."[22] Initially, the Court notes that to the extent the claims arose more than four years prior to the date of the Complaint, November 9, 2015, they are barred

---

[17] *Albino*, 747 F3d at 1166.

[18] *Id.* at 1172.

[19] *Id.*

[20] *Wyatt*, 315 F.3d at 1120 (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.3d 365, 368 & n.3 (9th Cir. 1988) (*per curiam*)).

[21] The inclusion of Sgt. Press appears to be based upon Solomon's allegation that Sgt. Press should not have participated in the processing of Solomon's claim at the first level.

[22] *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004).

by the applicable limitations period.[23] Thus, claims based upon events or acts that occurred prior to November 9, 2011, are barred by the applicable limitations period. As with the question of exhaustion, the statute of limitations is an affirmative defense to be raised by the defendants.

Claim 1 – Excessive Force.  It has long been well-established that the wanton and unnecessary use of physical force resulting in the infliction of pain constitutes cruel and unusual punishment under the Eighth Amendment.[24] Whenever prison officials stand accused of using excessive physical force in violation of cruel and unusual punishments clause, core of judicial inquiry is whether force was applied in good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.[25]  While the extent of the injury suffered by an inmate is one of the factors to be considered in determining whether the use of force was wanton and unnecessary in violation of the Eighth Amendment's prohibition against cruel and unusual punishment; absence of a serious injury does not end the inquiry.[26]  As recently stated by the Ninth Circuit.

> We have previously identified five factors set forth in *Hudson* to be considered in determining how the above question should be answered; namely, "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount

---

[23]   *See* Cal. Civ. Proc. Code §§ 335.1, 352.1(a) (providing a two-year statute of limitations for personal injury claims, which may be tolled for an additional two years for prisoners).

[24]   *See Whitley v. Albers*, 475 U.S. 312, 319–21 (1986).

[25]   *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley*, 475 U.S. at 320–21).

[26]   *Id.* at 7–8.

of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response."[27]

The factual allegations in the Complaint, if proven, may be sufficient to warrant a jury finding in favor of Solomon with respect to the actions of C/O Castaneda, Sgt. Press, and C/O Sanchez on the issue of excessive force.[28]

*Claim 2 – Destruction of Property*.   As noted in its initial Screening Order an unauthorized intentional deprivation of property is not a violation of the Due Process Clause of the Fourteenth Amendment where the state provides a meaningful post-deprivation remedy for the loss.[29] Accordingly, because California does provide such a remedy,[30] the Court dismissed Count 2 of the Complaint in its entirety without leave to amend. The Amended Complaint is not only contrary to the prior dismissal order, but also continues to fail to state a claim upon which relief may be granted.

*Claim 3 – Dr. Tate*.   As against Dr. Tate, Solomon attempts to raise a retaliation claim and a deliberate indifference claim under the Eighth Amendment. The Ninth Circuit has defined the parameters of a retaliation claim:

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of

---

[27] *Furnace v. Sullivan*, 705 F.3d 1021, 1028 (9th Cir. 2013) (quoting *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003)).

[28] As to the allegations against R.N. Settles in Count 1, as discussed further below with respect to Claim 4, they fail to set forth facts sufficient to warrant granting relief.

[29] *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

[30] *Barnett v. Centoni*, 31 F.3d 816–17 (9th Cir. 1994) (*per curium*); *see* Cal. Gov't Code §§ 810-895 (Claims and Actions Against Public Entities and Public Employees).

his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.[31]

The Ninth Circuit has "also noted that a plaintiff who fails to allege a chilling effect may still state a claim if he has suffered some harm."[32] Moreover, "the mere *threat* of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect."[33] Nor need the threat be explicit or specific.[34]

A prisoner must show some causal connection between the action taken by the state actor and the prisoner's protected conduct. That is, "[t]o prevail on a retaliation claim, a plaintiff must show that his protected conduct was the substantial or motivating factor behind the defendant's conduct."[35] The Amended Complaint falls far short of establishing a retaliation claim.

The Supreme Court, holding that the infliction of unnecessary suffering on prisoners violated the Eighth Amendment, stated:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced,

---

[31]  *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote and citations omitted).

[32]  *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citing *Rhodes*, 408 F.3d at 568 n. 11).

[33]  *Id.* at 1270.

[34]  *Id.*

[35]  *Id.* at 1271 (internal quotation marks and citation omitted).

deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.[36]

In *Estelle* the Supreme Court distinguished "deliberate indifference to serious medical needs of prisoners," from "negligen[ce] in diagnosing or treating a medical condition," holding that only the former violates the Constitution.[37]  In short, Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety."[38]

To make a claim, Plaintiff must show that the defendant exhibited "deliberate indifference to serious medical needs."[39] Such a showing is sufficient to demonstrate the "unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."[40] "Deliberate indifference is a high legal standard. A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment."[41]

As discussed above, to the extent that Solomon's claims arise out of events occurring prior to November 9, 2011, even assuming that he has properly exhausted his

---

[36] *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976) (footnotes, internal quotation marks and citations omitted).

[37] *Id.* at 106.

[38] *Whitley v. Albers,* 475 U.S. 312, 319 (1986).

[39] *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).

[40]  *Id*. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)) (internal quotation marks and citation omitted)).

[41] *Toguchi v. Chung*, 391 F. 3d 1051, 1060 (9th Cir. 2004); *see Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002); *see also Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (stating that even gross negligence is insufficient to establish a constitutional violation); *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam) (noting mere indifference, medical malpractice, or negligence do not support a cause of action under the Eighth Amendment).

administrative remedies as to those, they are more likely than not barred by the statute of limitations.

The allegations regarding the removal of Solomon's sexy pictures and posting of Solomon's web-page simply do not rise to the level of a constitutional violation. With respect to the allegation regarding Solomon's orthopedic shoes and eyeglasses as presently pleaded it is inconsistent.  Solomon alleges that Dr. Tate renewed the chrono for orthopedic shoes and eyeglasses, but in the next sentence alleges Dr. Tate never returned the orthopedic shoes and eyeglasses.[42]

*Claim 4 – R.N. Settles*.  Solomon alleges that R.N. Settles:  (1) failed to prevent Sgt. Press and C/O Banks from assaulting him; (2) refused to push Solomon in a wheelchair or gurney; (3) denied him the use of an asthma inhaler; and (4) failed to report the misconduct of Sgt. Press and C/O  Banks.

In addition to the failure to exhaust his administrative remedies, to the extent he alleges that Settles failed to protect him from, or report the misconduct of, Sgt. Press and C/O Banks, Solomon fails to plead a viable civil rights violation claim in this Court. With respect to the allegation that Settles refused to push him in a wheelchair, this also conflicts with the allegation in the Complaint that Sgt. Press prevented Settles from putting him on a gurney or use a wheelchair.[43] As to the denial of the use of an inhaler, Solomon does not provide sufficiently detailed allegations concerning how or the length of time for which he

---

[42]   The Court also notes that this allegation is contrary to the allegations in the Complaint:  (1) that Sgt Press confiscated Solomon's orthopedic shoes and eyes glasses [Complaint, Docket 1, p. 9]; and (2) that C/O Plotnik and Sgt. Press destroyed his medical appliances, including the eyeglasses [Complaint, Docket 1, pp. 13–14].

[43]   Complaint, Docket 1, pp. 6–7.

was denied the use of an inhaler for the Court to determine that it rises to the level of a deliberate indifference claim.

*Claim 5 – Due Process Claim.*  Claim 5 alleges that CDW Reed, Capt. Madsen, and Lt. Lopez violated Solomon's due process rights by allowing Sgt. Press to participate in processing Solomon's grievance in CCI-12-00040.  As the Court noted in dismissing this claim without leave to amend, prisoners lack a constitutional entitlement to a specific grievance procedure.[44] The Amended Complaint is not only contrary to the prior dismissal order, but continues to fail to state a claim upon which relief may be granted.

*Claim 6 – Tate/Press/Banks/Castaneda/Settles*. Reduced to its essence, except to provide further detail as to the inadequate treatment by Dr. Tate and the failure of R.N. Settles to treat his wrist injuries for the injury Solomon suffered on November 23, 2011, Claim 6 does nothing more that restate Claims 1, 3, and 4. With respect to the claim against Settles, it appears that as presently pleaded Dr. Tate's failure to treat the injuries suffered on November 23 was a superceding cause of the alleged failure of Settles, an RN, to treat Solomon's injuries.

*Policy Change*.  As the Court noted in its Dismissal Order, because nothing in the Constitution requires a state to permit any private citizen to initiate criminal charges, to the extent that Solomon seeks an Order compelling California to permit prisoners to initiate criminal charges against correctional officials is beyond the purview of this Court.

*Non-Compliance with Court Order*.  In its prior Order the Court gave Solomon specific instructions to be followed in preparing his Amended Complaint. Solomon failed

---

[44]  *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).

to follow those instructions.  In particular, Solomon failed to sequentially number his paragraphs, set forth the facts that support tolling the statute of limitations, affirmatively plead exhaustion of administrative remedies or that he was prevented by circumstances beyond his control from exhausting those remedies, or, in the case of Claim 6, combined unrelated claims.  The Court may dismiss an action for failure to obey a court order.[45]

## IV.    ORDER

Claims 2 and 5  are hereby **DISMISSED** in their entirety without leave to amend for failure to state a claim upon which relief may be granted.

The Amended Complaint is dismissed in its entirety without leave to amend as against C/O A. Bank and C/O D. Plotnik.

In all other respects the Amended Complaint on file herein is hereby **DISMISSED** with leave to amend.

Plaintiff is granted through and including **Friday, September 9, 2016**, within which to file a Second Amended Complaint consistent with this Order.   In filing his Second Amended Complaint, Plaintiff *must*:

1.      Adhere to the Federal Rules of Civil Procedure regarding pleadings, in particular, Rule 8(a), which provides—

(a) CLAIM FOR RELIEF. A pleading that states a claim for relief must contain:
        (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
        (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

---

[45]  *See* Fed. R. Civ. P. 41(b).

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

2.      Use and follow the instructions for completing the form provided by the Clerk of the Court.

3.      With respect to each claim plead without legal argument or citation to authority the facts entitling him to relief, specifically:  (1) the identity of the person(s) doing the act; (2) description of the act and the date it occurred; (3) the harm/injury suffered as a result of the act; and (4) the specific relief requested, e.g., amount of monetary damages.

4.      Sequentially number paragraphs and, to the extent based upon separate events either in time or nature, separate and caption each claim, e.g., "First Cause of Action – Deliberate Indifference" or "Second Cause of Action – Excessive Force."

5.      Attach copies of all documents referred to in the body of the complaint to the extent that copies of such documents are within his possession, custody, or control.

6.      If the act occurred prior to November 9, 2011, set forth specific facts that support the tolling of the limitations period.

7.      With respect to each claim affirmatively plead that he has exhausted his available administrative remedies or was prevented by circumstances beyond his control from exhausting his administrative remedies and, to the extent they are in his possession, custody, or control, attach to the Amended Complaint copies of all documents evidencing such exhaustion.

*In the event Plaintiff fails to file an amended complaint consistent with this Order within the time specified, or such later time as the Court may order, the Court may dismiss the action without further notice to Plaintiff.*

**IT IS SO ORDERED** this 5th  day of August, 2016.

S/ RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE